IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RAYVON CAMP,<br>　　　　*Plaintiff* | CIVIL ACTION |
| v. | |
| THE CURRENTLY UNKNOWN AND<br>UNNAMED CITY OF PHILADELPHIA<br>EMPLOYEES et al.,<br>　　　　*Defendants* | No. 22-192 |

# MEMORANDUM

PRATTER, J.                                                                                           JUNE 26, 2023

Rayvon Camp brought this action against Scotlandyard Security Services, Inc.¹ and unknown employees of the City of Philadelphia and Scotlandyard, asserting causes of action under 42 U.S.C. § 1983 for violations of the Fourth Amendment and various state law tort claims. Scotlandyard now moves to dismiss Mr. Camp's complaint under Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, the Court will grant the motion.

## BACKGROUND

Scotlandyard Security Services, Inc. is a private security company under contract with the City of Philadelphia at various locations throughout the city, including the Appletree Family Center. On January 21, 2020, Mr. Camp visited Appletree with his family to receive homeless services. Mr. Camp suffers from oppositional defiant disorder (ODD), attention-deficit/hyperactivity disorder (ADHD), bipolar disorder, and schizophrenia. As a result of these various conditions, Mr. Camp alleges that he experiences and makes unpredictable and uncontrollable verbal outbursts.

---

¹　In its motion to dismiss, Scotlandyard Security Services, Inc. notes that Mr. Camp incorrectly named Scotlandyard Security Services, Inc. as "Scotland Yard" in his complaint. The Court will refer to this defendant as "Scotlandyard Security Services, Inc." or "Scotlandyard."

1

While talking to his girlfriend at Appletree, Mr. Camp had one of these outbursts. According to Mr. Camp, his father observed the Appletree employees become alarmed by Mr. Camp's conduct. Mr. Camp's father allegedly explained to the Appletree employees that Mr. Camp was experiencing an outburst as a result of his mental disabilities and that Mr. Camp's conduct was not directed at them. However, according to Mr. Camp, the Appletree employees alerted three Scotlandyard security guards that Mr. Camp was acting disorderly and that he had threatened the Appletree employees and directed the guards to remove Mr. Camp and his family from the premises. The Scotlandyard security guards then allegedly grabbed Mr. Camp's arms behind his back, placed him in a chokehold, and threw him down the stairs. One of the security guards also allegedly head-butted Mr. Camp. Mr. Camp's family members were also removed from Appletree following the incident and were allegedly informed that they would no longer be able to receive shelter services from Appletree. As a result of this incident, Mr. Camp suffered injuries requiring medical treatment, including a concussion, a shoulder injury, and a black eye. Mr. Camp also alleges that he suffered from extreme emotional distress, depression, and anxiety.

Mr. Camp brought suit against the unidentified City of Philadelphia employees, Scotlandyard, and the unidentified Scotlandyard employees. He asserts four causes of action: (1) illegal seizure, false arrest, and false imprisonment in violation of the Fourth Amendment and 42 U.S.C. § 1983, against all defendants; (2) excessive force in violation of the Fourth Amendment and 42 U.S.C. § 1983, against Scotlandyard and its currently unknown and unnamed employees; (3) assault and battery, against Scotlandyard and its currently unknown and unnamed employees; and (4) a state law claim for false imprisonment, against Scotlandyard and its currently unknown and unnamed employees.

LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the sufficiency of the allegations contained in the complaint." *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). Thus, to survive a 12(b)(6) motion to dismiss, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Rather, the complaint must "state a claim to relief that is plausible on its face," meaning there is "more than a sheer possibility that a defendant has acted unlawfully." *Id.* The Court "must accept the truth of all factual allegations in the complaint and must draw all reasonable inferences in favor of the non-movant." *Revell v. Port Auth. of N.Y., N.J.*, 598 F.3d 128, 134 (3d Cir. 2010). However, the Court need not accept "bald assertions" or "legal conclusions." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).

DISCUSSION

Mr. Camp asserts two causes of action for violations of the Fourth Amendment under 42 U.S.C. § 1983, and two causes of action for state law intentional torts, including assault and battery and false imprisonment. The Court will first address Mr. Camp's federal civil rights causes of action and will then address Mr. Camp's remaining state law causes of action.

I. **Federal Civil Rights Causes of Action**

Mr. Camp brings two causes of action under 42 U.S.C. § 1983 arguing that Scotlandyard, and the currently unknown and unnamed employees of Scotlandyard and the City of Philadelphia, violated his Fourth Amendment rights. Scotlandyard seeks dismissal of Mr. Camp's federal causes

of action against it and its unknown and unnamed employees because Scotlandyard argues that it is not a state actor, thus it cannot be subject to liability under § 1983.[2]

"Section 1983 subjects to liability those who deprive persons of federal constitutional or statutory rights 'under color of any statute, ordinance, regulation, custom, or usage' of a state." *Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005) (quoting 42 U.S.C. § 1983). Thus, to succeed on a § 1983 claim, the plaintiff must establish that the defendants were acting "under color of state law," *Melo v. Hafer*, 912 F.2d 628, 638 (3d Cir. 1990), or, in other words, that the plaintiff was "deprived of a federal constitutional or statutory right *by a state actor*." *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009) (emphasis added). This inquiry turns not on "whether the state was involved in some way in the relevant events, but whether the action taken can be fairly attributed to the state itself." *Groman v. Twp. of Manalapan*, 47 F.3d 628, 638 (3d Cir. 1995); *accord Leshko*, 423 F.3d at 339 ("The principal question at stake is whether there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself.") (internal quotation marks omitted).

The Third Circuit Court of Appeals has outlined three tests set forth by the Supreme Court to determine whether state action exists: (1) "whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state," i.e., the public function test; (2) "whether the private party has acted with the help of or in concert with state officials," i.e., the close nexus test; and (3) whether "the [s]tate has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity," i.e., the symbiotic relationship test. *Kach*, 589 F.3d at 646 (quoting *Mark v. Borough of Hatboro*, 51 F.3d

---

[2] In the alternative, Scotlandyard argues that Mr. Camp's claims fail because he cannot state a claim under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (2018). However, in response to the motion to dismiss, Mr. Camp acknowledges that he has not plead a *Monell* claim. Therefore, this Court will not consider Scotlandyard's argument regarding potential *Monell* liability.

1137, 1142 (3d Cir. 1995)); *see also M.B. v. Schuylkill Cnty.*, 375 F. Supp. 3d 574, 595 (E.D. Pa. 2019). This is a fact-specific inquiry. *Groman*, 47 F.3d at 638. Moreover, under any approach, the court "must remain focused on the heart of the state action inquiry, which . . . is to discern if the defendant exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Id.* at 639 n.17 (internal quotation marks omitted).

## A. <u>Public Function Test for State Action</u>

Scotlandyard argues that Mr. Camp fails to establish state action under the public function test because (1) performing work under a contract with the City of Philadelphia alone is insufficient to turn Scotlandyard into a state actor, and (2) providing security services is not a function that is exclusively the prerogative of the state and is thus not state action.

The Supreme Court of the United States has held that "[a]cts of . . . private contractors do not become acts of the government by reason of their significant or even total engagement in performing public contracts." *Rendell-Baker v. Kohn*, 457 U.S. 830, 841 (1982); *see also Boyle v. Governor's Veterans Outreach & Assistance Ctr.*, 925 F.2d 71, 76 (3d Cir. 1991) ("Acts of private contractors do not become acts of the State simply because they are performing public contracts."). *Rendell-Baker* involved a school regulated by a city and under contract with the city's school committee. 457 U.S. at 833. The issue was whether the school's decision to discharge certain employees was state action. *Id.* at 835–37. Although "the school's funding, regulation, and function show that it has a close[] relationship with the State," the school "was not dominated by the State, especially with respect to decisions involving the discharge of personnel." 457 U.S. at 836–37. Thus, the school's conduct was not considered state action simply because of the school's contract with the city or the school's receipt of state funding. *Id.* at 840. The Court provided that

school[s] . . . [are] not fundamentally different from many private corporations whose business depends primarily on contracts to build roads, bridges, dams, ships, or submarines of the government. Acts of such private contractors do not become acts of the government by reason of their significant or even total engagement in performing public contracts.

*Id.* at 840–41.

The Third Circuit Court of Appeals reached a similar conclusion in *Black by Black v. Indiana Area School District*, 985 F.2d 707, 709–10 (3d Cir. 1993), which involved claims against "a private entity that was under contract with the school district to provide transportation for students to and from school." The Third Circuit concluded that

It is clear from *Rendell-Baker* that a state contractor and its employees are not state actors simply because they are carrying out a state sponsored program and the contractor is being compensated therefor by the state. Nor does the fact that the activity being performed is a public function render the contractor and its employees state actors. For the nature of the contractor's activity to make a difference, the function performed must have been traditionally the *exclusive* prerogative of the State.

*Id.* at 710 (internal quotation marks omitted). Although the defendants were "carrying out a state program at state expense" by providing services under a contract with a state actor, there was no state action because providing transportation services to school students is not "a function that has been traditionally the exclusive prerogative of the state." *Id.* at 710–11 (internal quotation marks omitted).

For the purposes of the public function test, *Rendell-Baker* and *Black* make clear that a private actor's performance of a contract with the state is alone insufficient to turn the private actor's conduct into state action, so the existence of the contract between Scotlandyard and the City of Philadelphia does not render Scotlandyard's removal of Mr. Camp from Appletree state action. "For the nature of the contractor's activity to make a difference, the function performed must have been traditionally the *exclusive* prerogative of the State." *Black*, 985 F.2d at 710

(internal quotation marks omitted). Thus, for Scotlandyard's performance of the contract with the City to be state action, it must involve conduct which is exclusively the province of the state.

By way of example, in *West v. Atkins*, 487 U.S. 42, 54, 56 (1988), the Supreme Court held that providing medical services to inmates is exclusively the prerogative of the state because the state has an affirmative constitutional obligation to provide care to its inmates, otherwise, the inmates' medical needs will not be met. This remains the case even when the state uses contractors to provide such services because "contracting out prison medical care does not relieve the State of its constitutional duty to provide adequate medical treatment to those in custody." *Id.* at 56. Thus, a physician who provided medical services to inmates under a contract with the state "acted under color of law for purposes of § 1983 when undertaking his duties in treating petitioner's injury[, thus,] [s]uch conduct [was] fairly attributable to the State." *Id.* at 54.

With respect to the provision of security services, courts have reached differing conclusions as to whether this is traditionally the exclusive prerogative of the state. In *Kach*, the Third Circuit concluded that providing security services to a school was not an exclusively government function, thus it held that a school security guard employed by a private security firm under contract with the school "had not acted under color of state law for § 1983 purposes." 589 F.3d at 631, 646–48. The Court noted that a Pennsylvania statute which "endowed a state agency with the power to address school violence [did] not make school security the exclusive province of the state." *Id.* at 647. To the extent there was an argument regarding the delegation of police power to the security guard, such an argument was undermined by the defendant's duties, which included, *inter alia*, "patrolling and supervising entrances, hallways, restrooms and stairwells . . . and preventing and/or assisting with any disturbance." *Id.* at 647 n.21 (internal quotation marks omitted). These facts established that the defendant "was a security guard with strictly circumscribed duties and

7

jurisdiction, not one imbued with all the powers of a state police officer." *Id.* Further, the Court distinguished *West* because "high school students are not comparable to prisoners" and the school "had no constitutional duty to provide security on its premises." *Id.*

As previewed in *Kach*, the Third Circuit Court of Appeals has held that "[w]here private security guards are endowed by law with plenary police powers such that they are *de facto* police officers, they may qualify as state actors under the public function test." *Fleck v. Trs. of Univ. of Pa.*, 995 F. Supp. 2d 390, 402 (3d Cir. 2014) (citations omitted); *accord Henderson v. Fisher*, 631 F.2d 1115, 1118 (3d Cir. 1980) (concluding that "the delegation of police powers, a government function, to the campus police buttresse[d] the conclusion that the campus police act[ed] under color of state authority").

Based on the current pleadings, the Court concludes that Scotlandyard's provision of security services at Appletree was *not* exclusively the prerogative of the state. In the first instance, providing services to homeless persons is not the exclusive province of the state—fortunately a myriad of private sector entities endeavor to alleviate the challenges to basic living needs for the homeless populations. Furthermore, although Mr. Camp argues in response to the motion to dismiss that the Scotlandyard security guards are a *de facto* police force, he has failed to allege any factual support in the complaint to demonstrate that this is the case. *See Kach*, 589 F.3d at 647 n.21. Moreover, the City of Philadelphia has no affirmative constitutional obligation to provide security services at its homeless shelters, like Appletree. *Id.* at 647 & n.21 (internal quotation marks omitted); *see also Wade v. Byles*, 83 F.3d 902, 906–07 (7th Cir. 1996) (concluding that *West* provided no support for the claim that a private security guard was a state actor because the city housing authority "bore no affirmative constitutional duty to provide security in the lobbies of [its] buildings"); *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1457 (10th Cir. 1995)

8

(finding that providing security at building leased from government was not an exclusively state function).

For all of these reasons, the Court finds that Mr. Camp has failed to establish that Scotlandyard is a state actor under the public function test.

### B. <u>Close Nexus Test for State Action</u>

Mr. Camp also argues that he has established state action under the close nexus test. He contends that the actions of Scotlandyard's employees in removing Mr. Camp from the Appletree premises "were those of the state, done upon the order of the state, and/or were so involved with the decision of the state, such that their conduct was state action." Resp. to Mot. to Dismiss at 9. Further, Mr. Camp argues that he has sufficiently pled state action by alleging that Scotlandyard's employees conspired and collaborated with the City of Philadelphia in removing Mr. Camp from the Appletree premises. Specifically, Mr. Camp alleges that the Appletree employees alerted three Scotlandyard security guards that Mr. Camp was acting disorderly, had threatened the Appletree employees, and should be removed from the Appletree premises. This, according to Mr. Camp, amounts to the state "exercis[ing] coercive power" over Scotlandyard, or "provid[ing] such significant encouragement" to Scotlandyard that Mr. Camp's removal from Appletree constitutes state action. *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982).

Determining whether state action is present in cases where the plaintiff alleges significant encouragement by the state "requires tracing the activity to its source to see if that source fairly can be said to be the state. The question is whether the fingerprints of the state are on the activity itself." *Leshko*, 423 F.3d at 340. Before the Court can reach this question, it must determine whether Mr. Camp has sufficiently alleged that Appletree and its employees are state actors.

With respect to the unidentified City of Philadelphia employees, Mr. Camp alleges as follows:

> Defendants the currently unknown and unnamed City of Philadelphia employees are employees of the City of Philadelphia through its Office of Homeless Services, which has a location at Appletree Family Center at 1430 Cherry Street, Philadelphia, PA 19102; or alternatively, it has a contract with Appletree Family Center to provide services for homeless individuals in the City of Philadelphia; at all times relevant to the allegations in this Complaint the aforementioned employees were state actors, acting under color of state law, and they are all being sued in their respective individual capacities.

Compl. ¶ 3. As set forth above, to the extent Mr. Camp alleges that the Appletree employees are state actors because of Appletree's alleged contract with the City of Philadelphia, this alone is insufficient to transform the conduct of the Appletree employees into state action. *See Rendell-Baker*, 457 U.S. at 841; *Boyle*, 925 F.2d at 76.

To the extent Mr. Camp alleges that the Appletree employees are state actors because they are City of Philadelphia employees, Mr. Camp's allegations are insufficient. Although municipalities and local governments are "among those persons to whom § 1983 applies," *Monell*, 436 U.S. at 690, "a municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Id.* at 691 (emphasis in original). "Where the state actor is a municipality, a plaintiff must plead that an employee of the municipality (1) acted pursuant to a formal government policy or a standard operating procedure long accepted within the government entity; (2) has individual policy making authority rending his or her behavior an act of official government policy; or (3) acted in an unconstitutional manner and an official with authority has ratified the unconstitutional actions . . . rending such behavior official for liability purposes." *Gentles v. Borough of Pottstown*, No. 19-cv-1199, 2019 WL 6170389, at *3 n.8 (E.D. Pa. Nov. 19, 2019) (internal quotation marks omitted) (quoting *McGreevy v. Stroup*, 413 F.3d 359, 368 (3d Cir. 2005)). Under the current pleadings, Mr.

10

Camp has not alleged any facts to demonstrate that the Appletree employees satisfy these conditions such that they can be considered state actors.

However, assuming, *arguendo*, that Mr. Camp had plausibly alleged that the Appletree employees are state actors, the Court must determine whether the Appletree employees significantly encouraged the removal of Mr. Camp. "[A] state normally can be held responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." *Blum*, 457 U.S. at 1004 (citing *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 166 (1978)). However, "[m]ere approval of or acquiescence in the initiatives of a private party is not sufficient to justify holding the State responsible for those initiatives under the terms of the Fourteenth Amendment." *Blum*, 457 U.S. at 1004–05.

The purported significant encouragement at issue here involves the Appletree employees allegedly (1) alerting the Scotlandyard security guards to Mr. Camp's disorderly behavior, (2) telling the Scotlandyard security guards that Mr. Camp had threatened them, and (3) telling the Scotlandyard security guards that Mr. Camp and his family should be removed from the premises.[3] A state actor suggesting that a security guard should remove someone from a facility does not in itself rise to the level of the state "exercis[ing] coercive power" or providing "significant encouragement" such that the security guard's actions can be attributable to the state. *Blum*, 457 U.S. at 1004; *see also Rendell-Baker*, 457 U.S. at 840 (concluding that a state's encouragement of

---

[3] The conduct that Appletree was allegedly encouraging was that Scotlandyard perform its contractual duties to provide security services at Appletree. As set forth above, actions of "private contractors do not become acts of the government by reason of their . . . perform[ance of] public contracts." *Kach*, 589 F.3d at 647; *see also Cmty. Med. Ctr. v. Emergency Med. Servs. of Ne. Pa.*, 712 F.2d 878, 881 (3d Cir. 1983) (providing that a close nexus "cannot be inferred from the private party's participation in public contracts"); *Belgau v. Inslee*, 975 F.3d 940, 949 (9th Cir. 2020) (concluding that a private party was not a state actor where the state's only role was the enforcement of a private contract because "there is no state action simply because the state enforces [a] private agreement").

11

nursing homes, which were dependent on the state for financial support, to transfer patients to less expensive facilities did not satisfy the close nexus requirement and thus could not be considered state action). Rather, the security guards' conduct was private action, and "[a] private action is not converted into one under color of state law merely by some tenuous connection to state action." *Groman*, 47 F.3d at 638. Here, Appletree's suggestion that the Scotlandyard security guards should remove Mr. Camp is too tenuous to serve as the vehicle by which to invoke § 1983. *See id.* at 642 (finding that a "first aid squad, though financially assisted by the Township and (we assume here) functioning as support to the police, nevertheless did not have its professional decisions dictated or guided by the state"). Further, the Court notes that the focus of this inquiry is whether "the defendant exercised power possessed by virtue of state law and *made possible only because the wrongdoer is clothed with the authority of state law.*" *Id.* at 639 n.17 (internal quotation marks omitted) (emphasis added). This is simply not the case here.

For these reasons, the Court concludes that Mr. Camp has failed to establish that Scotlandyard is a state actor under the close nexus test.

\* \* \* \* \*

Under the current pleadings, Mr. Camp has failed to sufficiently allege that Scotlandyard and its employees are state actors. "When dismissing a civil rights case for failure to state a claim, a court must give a plaintiff the opportunity to amend a deficient complaint, regardless of whether the plaintiff requests to do so, unless doing so would be inequitable or futile." *Brizuela v. Highmark Blue Cross Blue Shield of Pa.*, No. 23-cv-337, 2023 WL 2937636, at *4 (W.D. Pa. Mar. 22, 2023) (citing *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007)). "An amendment is futile if the amended complaint would not survive a motion to dismiss for failure to state a claim upon which relief could be granted." *Alvin v. Suzuki*, 227 F.3d 107, 121

(3d Cir. 2000). Because allowing Mr. Camp to amend his complaint to endeavor to replead and allege that Scotlandyard and its employees were state actors, amendment would not be futile. *See Brizuela*, 2023 WL 2937636, at *4 (concluding that amendment would be futile where the Court could not "foresee any additional facts that could convert Defendant . . . into a state actor"). Thus, the Court will dismiss the § 1983 claims against Scotlandyard and its employees without prejudice.

## II. State Law Causes of Action

In addition to Mr. Camp's § 1983 causes of action, Mr. Camp asserts two state law causes of action against Scotlandyard and the unidentified Scotlandyard employees: assault and battery, and false imprisonment. Because the Court will grant Scotlandyard's motion to dismiss the two § 1983 causes of action against it and its unidentified employees, and because the state law causes of action are not asserted against the unidentified City of Philadelphia employees, the Court must decide whether or not to exercise supplemental jurisdiction over these state law claims.

"[D]istrict courts shall have supplemental jurisdiction over all . . . claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . ." 28 U.S.C. § 1367(a). The exercise of supplemental jurisdiction over state law claims is discretionary, *Kach*, 589 F.3d at 650, and "district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). The decision to decline to exercise supplemental jurisdiction "should be based on considerations of 'judicial economy, convenience and fairness to the litigants.'" *New Rock Asset Partners, L.P. v. Preferred Entity Advancements, Inc.*, 101 F.3d 1492, 1505 (3d Cir. 1996) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726–27 (1966)). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988).

13

The Court will decline to exercise supplemental jurisdiction under 28 U.S.C. § 1367(a) over Mr. Camp's remaining state law claims for assault and battery and false imprisonment against Scotlandyard and its employees. Because Mr. Camp has failed to establish that Scotlandyard and its employees are state actors, these remaining state-law claims are more properly suited for resolution by the state court. *See e.g., Kach v. Hose*, No. 06-cv-1216, 2008 WL 4279799, at *9 (W.D. Pa. Sept. 12, 2008) (declining to exercise supplemental jurisdiction over state-law claims where § 1983 claim was dismissed because the plaintiff could not establish that the defendant was a state actor). Thus, the Court will dismiss Mr. Camp's state law claims.[4]

### III.   The Currently Unknown and Unnamed City of Philadelphia Employees

Although not addressed in Scotlandyard's motion to dismiss, the Court turns to Mr. Camp's apparent lack of diligence in identifying and serving the currently unknown and unnamed City of Philadelphia employees.

Federal Rule of Civil Procedure 10(a) requires that the title of a complaint name every party. Fed. R. Civ. P. 10(a). However, that rule is silent as to the use of fictitious names of defendants. Typically, the use of "Jane Doe" or "John Doe" defendants, or as here, "currently unknown and unnamed" defendants, is permitted by courts for only a finite amount of time, while the plaintiff ascertains their actual identities. *Givens v. Naji*, No. 17-cv-222, 2019 WL 4737618, at *1 (W.D. Pa. Sept. 11, 2019). If ignorance of an unknown defendant's actual identity is the product of lack of reasonable inquiry, then a complaint is properly dismissed without prejudice. *Stratton v. City of Bos.*, 731 F. Supp. 42, 45 (D. Mass. 1989).

---

[4]   Because the Court will decline to exercise supplemental jurisdiction over the remaining state law claims, the Court need not address whether Mr. Camp has sufficiently alleged a claim for punitive damages, or whether the complaint should be dismissed against Scotlandyard and its unidentified employees under Federal Rule of Civil Procedure 4(m).

14

Federal Rule of Civil Procedure 4(m) prescribes the amount of time a plaintiff has to serve defendants with summonses and copies of his complaint:

> If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m). The currently unknown and unnamed City of Philadelphia employees were originally named in Mr. Camp's complaint on January 15, 2022. On April 14, 2022, Mr. Camp filed a motion seeking limited discovery from the City of Philadelphia regarding the identity of the city employees involved in the incident giving rise to the allegations in Mr. Camp's complaint. On July 28, 2022, Mr. Camp's motion was denied in part with respect to Mr. Camp's request to obtain discovery from the City. The Court provided that if Mr. Camp "wishes to obtain discovery from the City, he must follow the procedures set forth in Rule 45." July 28, 2022 Order. Nearly a year has passed since the Court instructed Mr. Camp to seek discovery from the City of Philadelphia under Rule 45, yet Mr. Camp appears to have taken no action.

When service is not made within the timeline prescribed by Rule 4(m), a district court must determine whether good cause exists for an extension of time and grant such an extension, or if no good cause exists, determine whether to dismiss the complaint without prejudice or extend time for service. *Petrucelli v. Bohringer & Ratzinger*, 46 F.3d 1298, 1305 (3d Cir. 1995). To show good cause, a plaintiff must demonstrate good faith and a reasonable basis for noncompliance with the 90-day rule. *MCI Telecomm. Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1097 (3d Cir. 1995).

Mr. Camp has not demonstrated good cause, nor has he provided a reasonable basis for his noncompliance. Mr. Camp has not addressed whether he has sought discovery from the City of Philadelphia under Rule 45, per the Court's July 28, 2022 Order, nor has he addressed whether he

has attempted to identify or serve the currently unidentified City of Philadelphia employees. Given the absence of evidence of good faith in attempting to properly identify or serve the currently unidentified City of Philadelphia employees, the Court finds that dismissal of the currently unknown and unidentified City of Philadelphia employees is appropriate under Rule 4(m). Therefore, the Court will dismiss the unidentified City of Philadelphia employees without prejudice.

## CONCLUSION

For all of these reasons, the Court will grant the motion to dismiss and will decline to exercise supplemental jurisdiction over the pending state law claims. An appropriate order follows.

BY THE COURT:

*[signature]*

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE